Good morning, Your Honors. May it please the Court, my name is Nancy Ross and I'm here on behalf of the Bank of America 401k plan participants. I'd like to reserve ten minutes for rebuttal, Your Honors. It's better to keep track of your ten minutes. I will do so, Your Honor. Thank you. Your Honors, this case involves the very simple question of whether shareholders who purchase and acquire company stock through a 401k plan are entitled to the same protection of the securities laws as the purchasers who are outside of the plan. A bit of background, Your Honors. Countrywide, which was acquired by the Bank of America, was sued by its shareholders in a number of securities lawsuits. The District Court ultimately consolidated all of those into one lawsuit. That lawsuit ultimately settled in the amount of approximately $600 million. It is that settlement and sharing in that settlement that I am here on behalf of the plan participants to ask you to reverse the District Court's exclusion of those shareholders from the settlement for the shares that they either acquired through intra-plan trades or as a result of matching and discretionary contributions made by the employer as part of their compensation. The class definition in the settlement, which is the relevant portion at issue today, reads, all persons or entities that between March 12, 2004, and March 7, 2008, inclusive, either in the open market or pursuant or traceable to a registration statement, purchased or otherwise acquired Countrywide Financial Corporation publicly traded common stock. That's at ER 654, Your Honors. Did you object to that definition? We moved, Your Honor, before the District Court. We filed an objection, yes. We asked in that objection for clarification that plan participants who had purchased the shares in intra-plan. You filed an objection at that time after the district judge came out with that definition? We did, Your Honor. Okay. What happened is when the case settled and everybody got notice, then we were given the opportunity to object, and we objected to the settlement. So you didn't have an opportunity to object prior to that? We did not. That is correct. Okay. Did you object to the fairness of the settlement? We did not object to the fairness of the settlement, Your Honors. We worded the objection to clarify because it was simply unclear to us. We had no problem with the settlement. We thought that the settlement and the amount was certainly fair. But what we were concerned about and why we moved to object was it was unclear which of the claims of the plan, the plan was clearly a class member because it had purchased stock on the open market, and the plan participants would be honored through the plan of allocation. So we wanted to consider that. Did you ever have an award to the plan as a part of the settlement? I mean, you didn't know what you're entitled to. We know that the district court denied our objection. Okay. Yes, she denied the objection holding that because the class definition required that the stock be purchased on the open market and be publicly traded on the open market, that because the plan participants obtained their shares, paying for them but obtained them by netting between the various plan participants, that those losses would not be eligible for recovery. So what the judge said is, plan, you can recover for any of the stock you bought on the open market during the class period, but any of the stock that your participants purchased would not be covered. I'm trying to figure out because I think I'd like to follow up on what Judge Malloy just asked. I'm trying to make sense of what we're supposed to do here because it seems like the posture is very different from what we would typically see. It's interesting because it didn't look from your briefs that you were objecting to the fairness, but at the same time, you are objecting to something, and it looks like you're objecting to the class definition, you think, but you don't know for sure because you don't know. I think we don't know how it's going to impact you once the claims are processed. Am I close? Let me try to explain what happened. First of all, we are objecting to the district court's interpretation of the class definition. Well, let's just talk about that for just a minute because it looks like the district court went to great lengths to try to figure this out and try to develop a factual record, but in the end, it doesn't look like you satisfied her, and I guess hence the appeal of this case. Is that correct? Okay. But I'm trying to figure out how can the result be any different on appeal if there wasn't a sufficient factual record? I mean, we don't have any more facts than the district court did in terms of how much, whether people in your plan are entitled to something or if they're not because it looks like the claims processor for some reason held that in abeyance while that claim of yours in abeyance, this appeal came up, and then in the meantime, he's processing all of the others. Is that right? Is that what's happening? Well, it was the other way around in that our appeal came up, so our appeal was in the form of a fairness hearing when the court heard the objections, and we asked the court to clarify that plan participants would be treated as class members, and she denied that, and she said the only claims that will be honored in the plan of allocation will be the claims of the plan for the stock bought on the open market, and then the claim forms went into the claims administrator, and actually the plan has submitted two variations of claim forms depending upon the outcome of this appeal. Does that clarify, Your Honor? Why shouldn't we wait until we know what the answer is to your two claims forms? They've already said that they won't accept the one that I'm arguing here before. They will not accept the claims of the plan participants' purchases by way of intra-plan acquisitions or also by way of the matching and discretionary shares. Who's they when you say they? The class counsel who's instructing the claims administrator, so my colleague here today. Okay. So is your problem with the settlement is that you don't have a claim or that you should have a claim under the language of the settlement? We should have a claim under the language of the settlement. It is a interpretation of the class definition, which is at issue. So then should this be couched in terms of an objection to the settlement? It seems a little confusing. Well, Your Honor, you know, in some respects we have that same confusion, but that was the mechanism because what happens is, maybe perhaps a little bit of background, when a pension plan settles with the plan sponsor, which is the pension plan was one of the parties here, the Department of Labor has said that for a pension plan to give a plan sponsor a release can involve a prohibited transaction under ERISA. So in order to avoid having it be deemed a prohibited transaction, the Department of Labor a number of years ago said what you can do, plan, is you can go hire an independent fiduciary who will look at the settlement and determine whether or not the settlement is fair and reasonable to the plan and its participants. So here the plan hired a company, Independent Fiduciary Services, who stepped into the shoes of the plan fiduciaries and they looked at the settlement and what Independent Fiduciary Services said is, well, you know, this is a really good settlement monetarily. We have no problem with that, but we're just not sure which way the plan participants' acquisitions of stock are going to be treated. So the only way that we could clarify that as a plan fiduciary was to file an objection. Subsequently, we entered into negotiations with class counsel and we asked class counsel, they had the objection that had been filed and we discussed it and they said, okay, we understand your concerns and one of the concerns is that the shareholders, the plan participants' shareholders, hold their shares in unitized interest. It's an accounting mechanism. And they said, so what we'll do is we will honor those shares for purposes of this settlement. What happened then, so we went before the district court with that agreement and the district court disagreed and she would not accept the agreement that had been reached between class counsel and the plan fiduciaries on behalf of the plan participants. Your Honors, I now realize I'm past my ten minutes. Should I sit down and then save the rest for rebuttal? Well, let me just ask one more question if you don't mind. So you're saying you did file a claim? The plan filed a claim, yes, for the shares that were purchased on the open market. And what happened to that claim? It's still, as my colleague will tell you, it's still in the process. The claims administrator, I believe, is still in the process. They may be through the process, but right now all the plan is going to get is compensation for the shares that were purchased on the open market during the class period. Okay. We don't know yet what's going to happen to the rest. No, we know we are not going to get it. If it stands today this way. I thought you said they were still processing it. I believe that they are over. My understanding is that they have actually gone to the district court, given her notice that they have finished processing and that they are ready to distribute and that they have said that the distribution will be made according to the judge's ruling down below and, you know, should there be some sort of, or pending this appeal. So they are ready to pay out and they are only going to pay the plan for the shares purchased on the open market. And so what do you think should happen? I think this court should vacate Judge Feltzer's ruling. Which ruling? Denying the objection, I'm sorry. Okay. And remand it back to her with instructions that she should honor, she should tell class counsel that they need to honor the losses suffered by the plan participants for the stock that they acquired during the class period, just like any other shareholder. And then what if you have objections to that distribution? What happens? I'm sorry, which distribution? Well, if we remand it like you suggest, I guess reverse the district court. I'm trying to figure out what posture it is. I think that's what it would be, Your Honor. Okay. Reverse and remand it. And let's say the plan folks are unhappy with the distribution. Oh, we have no problem with the distribution as long as we're treated like all the other shareholders. That's a defined amount. So all we're asking is include our purchases, the plan participants' purchases, as eligible securities, just like all the other shareholders that purchased it on the open market. What's the difference in the money? Well, if they, if the claims administrator honors the, all of the plan participant shares, it's roughly about $15 million, I believe, Your Honor. And I think with the $2 million shares that they are going to honor, it's significantly less. I'm not sure. It's maybe a million and a half. What I don't quite follow here is the district judge reserved her rulings until she found out how we were going to be treated by the administrator. Isn't that right? No, Your Honor. She denied our objection. Well, what did she do when she said, I'm unable to say at the present that I have a factual basis to dealing with that issue? I say because I don't know when Sacramento said whether it was inside or outside. I'm sorry, Your Honor. At ER 79, at line 21, the court states, and this was, she relied on the hearing for her ruling. She incorporated her hearing, her ruling at the hearing. It says the court overrules the objections via has to the extent, I think via must has to the extent that it asks the court to recognize matching or discretionary objections made by Countrywide even though not purchased on the open market. And to the extent it asks the court to include transactions which occurred outside of the class period, I won't do that. And above that, Your Honor, she explains her ruling at line 14 through 16 where she says, however, to be included in the class, the court finds that the Countrywide common stock purchase must have been publicly traded during the class period as defined. And that was the problem, Your Honor. She interpreted the class definition incorrectly to find that only stock which was purchased on the open market and only stock publicly traded, meaning, again, purchased on the open market, would be recognized for purposes of a claim. And that's just not how a 401K plan works when there's a company stock fund. Further questions, Your Honor, or should I sit down? Well, you want to save some time. We'll see how much time you need. Well, I have three minutes left. Or do you want to save that? I'll save that. Thank you. Your Honors, good morning. May it please the Court. David Goldsmith, Labitant-Susharo, representing the New York State Common Retirement Fund and the New York City Pension Fund. Your Honor, Ms. Ross describes this appeal as assuring that the 401K plan would receive the same protection under the Federal securities laws as other class members. We see it differently, Your Honors. We see this appeal as being about whether the 401K plan will be treated the same way as other class members in this very complex class action, or whether the 401K plan will be able to exponentially increase its settlement recovery at the expense of other class members. Could you just separate? Are there two issues here, one where there is a ruling and one where the matter has been delayed by the district judge until the administrator decides what to do about it? Right. So procedurally, Your Honor, in addressing the Court's questions on that point, we see the appeal as ripe for a decision by this Court concerning the scope of the participation by the plan. Judge Felser considered the objections by the plan. We had a lengthy fairness hearing in which there was argument by both sides. The Court decided that the plan could participate in the settlement only to the extent that the plan went out onto the open market and purchased the publicly traded countrywide common stock. The plan — excuse me, the Court decided that the plan could not participate to the extent that it acquired what we've called S-8 stock directly from the company for purposes of matching and discretionary contributions. And the Court decided that the plan could not participate in terms of this welter of intra-plan transfers of unitized interests among the individual plan participants. So if you will, there's three — That issue is ripe for review? We believe it is, Your Honor. And it's the — it's true that the claims of the plan have not been processed by the claims administrator. The posture, Your Honor, in terms of the distribution is that because of this appeal, we felt and our clients felt that it was appropriate to hold the claims plans and other claims by certain individuals who didn't purchase on the open market in abeyance until we could get a ruling from this Court. What we did, Your Honor, is we didn't want to hold up the distribution to the entire class because of this proceeding. So we did — So are you putting us in a position to take the first run, though, at how it should be distributed, the funds within the $30 million? I'm trying to figure out if — What we did, Your Honor, was we asked Judge Felser, and Judge Felser agreed to apply a holdback. So we did not distribute the entire net settlement fund to the class at this time. We're holding the plans claims and certain other claims in abeyance. We held back — I believe the amount was $10 million, so that there would be plenty of money to satisfy the plans claims in the event of a reversal. And then we did proceed with court approval to issue distribution payments to all the other members of the class which are not in dispute and to which there has been no objection. Once we have a decision by Your Honors in terms of the scope of the plans participation, we'll be in a position to go back to Judge Felser, which we would have to do anyway because in a case of this size, Your Honor, we would need to do a second distribution anyway and perhaps even a third distribution. So it's not going back to the court strictly for the plans claims, but we would have to go back to the court to get approval to do a second distribution anyway. And so what we will do is — And is that common? I mean, it seems like everything should be done and then you appeal. But is that uncommon? Well, in the Motorola case, Your Honor, in the Seventh Circuit, it's true, I believe, that the plan there waited until the distribution stage. Right. Here, they did not. They filed their objection. It was incumbent upon us to respond. Why shouldn't we wait like the Motorola folks? Well, I think we've got a full record, Your Honor. At the Fairness hearing, the plan had a full and fair opportunity to present its evidence. And the notice, Your Honor, said that show up at the hearing, present all your evidence, including any witnesses or any documents. We had a full hearing. The plan presented its evidence. Judge Felser found that it was somewhat insufficient, and we agreed with that ruling. What would have happened if we — if this had proceeded like Motorola and you hadn't directed the claims administrator to hold back? What would have happened? I think what would have happened is we might be here today anyway, Your Honor, because at the — once we filed a distribution motion, we would have given notice to the plan and all other class members about how we were treating those claims. And presumably, Ms. Ross would have objected then. Ms. Ross would have raised her hand and said, wait a minute, you're not giving my client enough of the settlement money. And then I suppose we would have had the same argument just at a distribution hearing. But would it have gone back to Judge Felser, or would it have come directly to us? No, it would have been before Judge Felser. So I appeared before Judge Felser to argue a distribution motion. There were no class members there. I suppose that — I mean, isn't she in a better position to consider that objection at that time, or do you think she's already ruled on that? Oh, we think she's already ruled, Your Honor. I think the argument before Judge Felser when I appeared on the distribution motion would have been precisely the same thing. And we — the court — Judge Felser ruled on the proper treatment of the plan under the class definition and under the plan of allocation. And we're here to defend the Court's rulings. You know, Ms. Ross made — So the district court then, if we had proceeded under the Motorola method, would have heard the objection and said, no, I already told you I'm treating your stock — it's only stock on the open market, so all this unit and — I think that's exactly right. I think — I think during the hearing that we had on a distribution motion, I believe that was in last November, Your Honor, if Ms. Ross had appeared, Judge Felser would have said, you know, I've already given you my ruling on this and there's nothing to change my mind. And then perhaps the plan would have appealed the distribution order and we'd be here just the same, although it is somewhat fortuitous for the rest of the class that they haven't had to wait for their money while this proceeding has been ongoing. We felt that it was appropriate to move forward with the distribution to the extent we could, and as I indicated, Your Honor, we did a holdback to make sure there's enough money held back to satisfy the plan's claims in the event that it prevails here. So if I understand — excuse me, go ahead. Now, I was going to get into the merits. I don't know if you had another procedural question. If I understand — Yes, sir. — your position is that this is ripe for the court of appeals to determine because of the district court's ruling. Yes, sir. Now, and Ms. Ross doesn't — so she's appealing. If the district court had ruled in her favor, would you have been in a position to appeal, saying that the way the court defined the class overpays the plan? I think so, Your Honor. We had a final judgment and we had an order on the plan of allocation. There's a separate order approving the plan of allocation, which expressly overruled the objections of the plan and certain other objectives. If Judge Felser had issued an order on the plan of allocation but accepting those objections and saying, no, Mr. New York State and New York City pension funds, you have to treat the plan in this way to honor all these other kinds of securities, I think it would have been ripe at that point, Your Honor, to raise this to your honors and to disagree with that ruling. I think the distribution stage, which is still ongoing, really is mechanical. We are here to receive this Court's indication of whether Judge Felser was right or wrong or whether she acted within her discretion. And the — you know, what we learn about the plan's proper participation in the settlement will be applied to — in the second distribution, and that will be presented to Judge Felser. I suppose if Ms. Ross thinks that the claims administrator still isn't doing it right, she'll have an opportunity to show up at that time and raise those issues then. But it appears to us that we have a — we have a settlement that's been approved as fair, reasonable, and adequate, and we have a separate plan of allocation order, which has been issued approving the plan of allocation and overruling the objections. Let me say this. Perhaps this would assist. The objections — and it's been agreed upon and stipulated that the objections are solely to the plan of allocation. This appeal, Your Honor, is how the plan is treated under the plan of allocation. It's really not an objection to the class definition. Ms. Ross never — never objected to the class definition, qua class definition. The question before Judge Felser, the question before Your Honors, is how much money the plan will get. And I can answer Your Honor's question about the dollars involved, if Your Honor would like to know that. Ballpark is good enough for me, so. Yeah. I mean, just to get to that, I mean, the plan's recognized claim under the current posture, under Judge Felser's rulings, is about $78,000. Recognized claim is not the amount that the plan or any other class member gets in the settlement, but it's a dollar figure that's used to weight every class member's participation in the net settlement fund. So, in fact, we anticipate that — that class members will probably get roughly 27 percent of their recognized claims. So that's the current state of affairs. We estimate that if the plan is successful in their contention, that what we've called the S-8 stock is included. That's the stock on the matching and discretionary contributions. We estimate that that recognized plan will be $18 million. That's about 231 times greater. So there's definitely a lot at stake. And in terms of the question of intrafund transfers, the unitized interest going back and forth and back and forth during the class period among plan participants, we haven't even gotten to that, Your Honor. It seems like there's a welter of those transactions which are totally divorced, we submit, from the public float of common stock and should not be considered here. We think that would be even greater. So one of the reasons why we're here, Your Honor, and why we weren't, frankly, able to settle this dispute is because there's a big swing in terms of the plan's recovery. And we are concerned, the lead plaintiffs that I represent are concerned, that if the plan is able to participate to the extent that it wants to, it will receive a really bloated recovery. Let me ask you two questions here. You believe everything is final, Judge Felsen's actions resolve all legal issues rightly or wrongly, and every issue is properly before us. We believe so, Your Honor. And two, do you support Judge Felsen's decision? I do, Your Honor. So you're asking that we affirm. I am, Your Honor. Okay. Are there two different issues, this interplan, and those are separate issues? Yes. So if I may, the way we view the dispute, Your Honor, there's sort of three categories of transactions and securities that are involved here. One is the purchases by the plan as a trust entity of Countrywide Common Stock on the New York Stock Exchange. Those transactions are included in the class. They're included in the settlement. The plan will recover on those. The plan purchased approximately 2 million shares of Countrywide Common Stock on the open market during the class period. We have never disputed that the plan is a class member to that extent. And Judge Felsen so ruled, and we agree with that ruling. The second category is what we've called the S-8 stock. So you have these Form S-8 registration statements filed before the class period by Countrywide Financial and during the class period on May 11, 2007. Pursuant to those registration statements, the company contributes common stock directly to the plan for purposes of supporting these matching and discretionary contributions that the plan makes to its participants, I believe, every quarter. You have, you have, and there's sort of a bifurcation there, Your Honors. You have, you have S-8s before the class period, and the plan wants to get recovery on those. But that's a, that's a registration statement that was never alleged to be false and misleading and could not have been alleged to be false and misleading because it's before a class period. The plan wants to recover on those multi-millions of shares. We think those are outside the class for a number of reasons, which I can elaborate on. Then you have one S-8 registration statement that was filed during the class period on May 11, 2007. And pursuant to that registration statement, the company contributed additional millions of shares to the plan for purposes of these kinds of employee benefit contributions. This is a critical part of the appeal, Your Honor, because our contention, as set forth in our brief, is that all of those shares, the shares that flow from the May 11, 2007 S-8, are conclusively outside the class and outside the settlement because any claims related to those were released in a case called Lane, L-A-Y-N-E. Lane v. Countrywide Financial was a class action filed in Los Angeles Superior Court, a class action filed under the federal securities laws but filed in state court under Section 11 of the 33 Act based on alleged false and misleading statements in the May 2007 Form S-8. The same kind of false and misleading statements, the same kind of alleged fraud that we alleged against Countrywide Financial having to do with lending practices and the like. That class action was brought on behalf of a class of all Countrywide employees that acquired securities pursuant or traceable to this May 2007 registration statement. In other words, plan participants. So it's a very defined class, that the class in Lane are the plan participants filed by a different firm. My firm was not involved in this, in that case. In a separate court and proceeded entirely separate from our case, was never removed to federal court, was never consolidated with our case. You had a settlement in the Lane case, Your Honor, which was approved as fair, reasonable and adequate. You have a very broad release, typically, as typical, that was – that went into force in the Lane case. The Lane release released all claims that could have been brought, were brought, might be brought in the Lane case concerning not only the securities that were specifically involved in the Lane case, but, you know, any securities involving any Countrywide, issued by any Countrywide entity. So we think it's really quite clear, really beyond per venture, that both the S-8 stock issued by the company to the plan, pursuant to the May 2007 S-8, and also these unitized interests that were acquired by plan participants, if they are traceable to the S-8 stock, which we don't think they are, but at least from May 2011, 2007, through the end of the class period, are released, gone. They cannot be compensated in this settlement. It would be improper for us to do that. Judge Felser was aware of the Lane decision. It was briefed before her. It was discussed. It was part of the briefing. And we believe it formed part of her reasoning, and it should be confirmed – affirmed, excuse me. Now, Ms. Ross has argued that the Lane release doesn't apply because the release didn't actually go effective in terms of having final approval of the settlement until after the fairness hearing and after Judge Felser ruled. That is true as a matter of sequence, but we don't see why that should matter. The case, the Lane case, had received preliminary approval before, excuse me, before the fairness hearing. We argued that. And in any event, the release is there, and it is effective, and it would be improper for the plan to double dip in this matter by having those shares and securities compensated. Now, stepping back in time a bit, you have the S-8 stock that was issued pursuant to an S-8 registration statement filed before the beginning of the class period, but then acquired by the plan during the class period. And we think, Your Honor, that those shares also are outside the scope of the class and shouldn't be eligible here for a number of reasons. One reason is that the purpose of the class certification proceedings here was to figure out with great specificity. Judge Felser, and I think Your Honor, Judge, referred to this. Judge Felser approached the class certification proceedings here in an enormously detailed, needle-specific manner, unusual in these kinds of cases. Securities class actions, as the Court is well aware, are routinely certified for class treatment. Judge Felser was not so willing to certify classes without a really detailed understanding of exactly what claims were being certified and exactly what securities were in those claims. Our position, Your Honor, is that common stock was intended to be a Section 10b security solely related to purchases on the open market. I just need to ask you some questions here. So in your view, did the employee suffer basically the same loss based on their ownership interest in these units of the fund? And if so, should they be compensated for those losses? And does it matter to us how much they're compensated for, or we just need to determine that they should or should not be compensated? Well, I don't think the dollar figures need to be before the Court, although I've given some indication of that in response to Judge Malloy's question. See, because if the dollar figures have to be involved, it seems like that normally comes to us from the district court. And that's what's creating some, I think, some pause on my part. So, but what I hear you saying is that you'll figure out the compensation amounts later. You're just wanting us to determine whether Judge Falser ultimately, when she ruled, even though she felt like she didn't have enough facts, that the plan couldn't be a part of the class if they didn't buy on the open market. Right, Your Honor. We have a very detailed, we have a detailed class definition. We have a detailed set of class proceedings. We have a detailed record on all these points. We have categories of transactions, categories of securities that are or are not in the class. We differ on which ones are in and out. We think the Court is in a position to affirm Judge Falser's ruling on that or not. And so did they, did you agree that some of the employees suffered loss, basically the same losses based on their ownership of units in the fund? No. We disagree with that, Your Honor. Tell me why. Our position, so the third category, Your Honor, we refer to are these units. Unitized interests, our position, Your Honor, is that unitized interests are not publicly traded common stock. The class definition refers to publicly traded common stock. Our position is that these unitized interests are not that. And there is a case that says so in the Motorola case. Judge Paul Meyer in the District Court of Chicago so ruled, and that was affirmed by the Seventh Circuit. And Judge Sykes in that decision said the same thing. And it was not a highly disputed point. Unitized interests, as we understand it, are not actual shares. It's an interest in a fund, something like a mutual fund. It consists of ownership of a certain set of shares and some cash. It's a type of security that's used in order to ease the transfer of these unitized interests between participants and outside of the scope of the trading on the exchange. And that's part of the concern, Your Honor. I mean, the unitized interests were not and could not have been part of the public float of countrywide common stock that was considered in our damages analyses, for example. So this may be overly simplistic, but if a group of friends, you know, brought a bunch of countrywide stock and then devised a system to trade the stock among themselves, they would or wouldn't have claims for the trades under that system. I think the way this class definition is devised, and Judge Felzer was very concerned early in the case, Judge Felzer was very concerned about the fact that there were many, many securities, countrywide securities that were public and many countrywide securities that were not. And there was a whole separate case called the Argent case that talked about these very specialized convertible debentures that apparently were purchased privately by qualified institutional investors. And Judge Felzer was very careful from the get-go to separate that out. And Judge Felzer said, okay, New York pension funds, you are the lead plaintiffs for the public securities and the public securities only. And so we were careful in our class certification motion and the discovery on that to limit the case to these public securities. Our position is that these unitized interests are not publicly traded common stock. And we think that's also supported by the pendency, the separate pendency of the Lane case, this Lane case that's going on separately in State court. No one ever said, not the plaintiffs, not the defendants, not the court, no one, until the plan came along, that those securities were publicly traded securities that should have been in this New York fund's case and should be recompensed in this settlement. So ---- And if the plaintiff suffered loss based on trades of fund units and cannot submit these claims, could they initiate their own securities suit for those units? No, Your Honor, because the Lane settlement takes care of that. They are covered in the Lane settlement. So the decision is not, it's not that the troubles, if the court is concerned about people being left out in the cold, I don't think the court should have those concerns because, one, the plan itself will get money in the settlement. Two, the employees of the plan will get money or have gotten money in the Lane settlement, at least for the transactions from May 2007 on. And on that point, the plan has also received $55 million in another case called Alvidrez, which is an ERISA case. So the plan, one of the plan participants, Mr. Alvidrez, also brought a secure, not a securities class action, an ERISA class action in Federal District Court in Los Angeles against Countrywide Financial for ERISA violations based on the same fraud. That case was settled, and the plan received a check for $55 million. Now, we're not suggesting that the plan is not entitled to have both a securities claim and an ERISA claim. But I think it's an important fact before the court that there was already a lot of money here. And I think Judge Felser had some concerns about that, and that's one of the things that distinguishes the Kurzweil case, which Ms. Ross relies upon and we discussed in the briefing. So, yeah. Do you think – I'm not suggesting you do anything at the moment, but do you think that the two of you agree on what issues that Judge Felser decided are – you want us – you want us to affirm and your opponent wants us to reverse? I think we have an agreement on that, Your Honor. I think we're – I think we have an agreement on what the court ruled and what the court – what the court ruled would be included and what the court ruled would not be included. We disagree on that. But I think there's an understanding between the parties as to what Judge Felser did and what we're asked and what – what the scope of what this Court is being – being asked to do. I mean, Ms. Ross referred to some negotiations and some discussions we had prior to the fairness hearing. We did have some discussions. There was an interest. Once their objection came in, there was an interest in trying to narrow differences when you have an objector to a settlement. This is a common state of affairs. I mean, we don't necessarily like to be in a dispute with a member of a certified class. And so there was an effort to narrow our disputes. But what we found later, Your Honor, was that the – our efforts to narrow those disputes were based on representations in the objections. That turned out to be wrong. There were representations in the objections that all of these shares could be directly tied to purchases of shares on the open market. That turned out to be incorrect. As soon as we learned that that was incorrect, we were no longer willing to keep, you know, having those discussions. We think Judge Felser's rulings, which disregarded those discussions, are correct and should be – should be affirmed by the Court. Thank you, Your Honor. Your Honors, very quickly, as to the question of whether or not this case is right for judgment, ER1 is the final – final judgment and order of dismissal with prejudice in this case, and it was there that Judge Felser overruled the objections. So I do believe that there's no disagreement between the parties that this is right and ready for ruling before the Court. Do you think you could simply describe the – in a way that your opponent would agree with the rulings, specific rulings that Judge Felser made? Sure, sure, sure. Do you think you would agree on what those are? I do. I do, Your Honor. I do. I think we would both agree that what Judge Felser said is that with respect to shares of stock acquired by plan participants, first, by intra-plan trades, and second, by way of matching and discretionary contributions from the employer, that any loss suffered as a result of artificial inflation on those shares will not be recognized for recovery under the class settlement. Only shares traded in the open market. Purchased by the plan on the open market. Purchased. Precisely, Judge Murguia, precisely. There are a couple of things in my very brief time that I'd like to address. Let me address the Lane settlement. By the way, Judge Malay, I had the numbers off a little. I apologize. Would the answer to that question resolve everything, the question you just stated or the conclusion you just stated, if we agreed or disagreed with Judge Felser's ruling on that? Correct. Would that – that would answer the whole appeal? That's correct. Yes, Your Honor. If this court disagreed and found the plan participants, the loss on shares of stock that were either acquired by way of intra-plan trades or by way of matching and discretionary contributions, if this court disagreed that those should be then this court would, I believe, remand this back to Judge Felser with an order telling her to instruct class counsel to have those shares that I just identified recognized by the claims administrator as eligible securities for a recovery. And if we affirm Judge Felser in that respect, that would be the end of it also? That is right, Your Honor. That would be the end. And to answer Judge Murguia's question about whether or not there would be any other recourse for these plan participants, we believe the Lane case, which I'll go into in a minute, is completely separate. But what is the problem here is that because this was a class action settlement and the plan was a class member, that the release bars any of the plan participants from seeking any other compensation. So this is it. With respect to the Lane case, Your Honor. And is that because you have a different view of the Lane case? No, it's because there was a release in this securities case that bars the plan or its participants from bringing any other action relating to the securities. So the release was given by way of the court approval of the class settlement, which incorporates the releases here in this case. The Lane case is an entirely different animal. And, in fact, Your Honors, in the Lane case, just to set the stage, the plan was not in that case, Your Honor. That case was brought by certain plan participants against the employer countrywide and various people. The sum and substance of the settlement in that case for the plan participants was less than a million dollars. So we're talking about very small potatoes. The Lane case was only a Section 11 claim based upon alleged misrepresentations in one registration statement. And under the Herman and McLean case by the Supreme Court, the Supreme Court has made it very clear that stock, which is issued pursuant to a registration statement, can be both the subject of a Section 11 claim as well as a Section 10b claim for fraud on the market. Moreover, Your Honors, the Lane release, even if you can get past the illogical assumption that a release which was granted a number of months after this case was settled. So Lane, the release in Lane was in June of 2011. Judge Felter's order was in March of 2011. So first, the Court would have to find that the Lane release could effectively bar claims retroactively. Secondly, it would have to find that the Lane release, which released claims which could have been brought in Lane, which were only Section 11 claims, would apply to the Section 10b claims in this case. And thirdly, Your Honors, at SER 42, Lines 4 through 9, is a carve-out in the Lane release that states, notwithstanding the foregoing, which is talking about the settled claims, nothing in the definition of settled claims shall prevent plaintiffs or class members, which were the individual plan participants, from seeking to participate as unnamed class members in any settlement or other recovery in any action that relates to the purchase, sale, acquisition, or holding of any security issued by countrywide or countrywide-related entity. And I am sure that, although neither my colleague nor I were parties to the Lane case, I am sure that that stemmed from the recognition by all involved, including my colleague, that the Lane case had nothing to do with the 10b-5 fraud-on-the-market claim. So the Lane case really does not apply whatsoever here. And, Your Honors, I think this case really boils down to a very simple issue of contract interpretation. And that's what this Court said in the Jeff D. case. And Mr. Goldsmith and class counsel in their briefs provided, you know, just a very long, involved, intricate explanation of what the theory was behind the ultimate class definition that resulted. But regardless, they don't argue that the class definition was ambiguous. There is no need for this Court to look at extrinsic evidence to determine what the class definition meant. Your Honors, the class definition has an either-or. It says the stock that shall be recognized is that which is either acquired in the open market or through a registration statement. It just makes no sense to exclude, and it's frankly unfair to exclude these people who undisputedly acquired their stock through a registration statement. Because in order for the plan to provide stock to any plan participant, so to have it available for purchase, it must by law be registered under Section 8. So the offering of any stock by the plan to the plan participants, Mr. Goldsmith was referring to Section 8. I'm not sure what S8 stock is, but I think what class counsel means is that for any plan to provide its participants with an offer of stock, the offering must be registered under Section 8. I have just two questions before we end here. It seems like units in the fund is slightly different than common stock, and that's not insignificant. I guess I want to know what your response is to that, because I'm trying to figure out how we relate these units to the common stock. Sure. Okay. Well, what the unitized interests are in the stock, Your Honor, is not like a mutual fund. Let me start there. Because the individual plan participants are the beneficial owners. They own the stock. ERISA governs their ownership of stock, and it says under ERISA 404c, they have to be able to vote the stock, they have to receive a prospectus. The unit is used. Well, why should the units be treated the same as common stock? Because the unit holds stock. The unit is an accounting mechanism. It's an accounting mechanism that the plan uses internally so that if I want to sell my stock and Mr. Goldsmith wants to buy my stock, that can be done quickly. Or if I want to move out of stock and I want to move into another investment, I don't have to wait the 3-day settlement period under the securities laws. Well, let me ask you about that. If the fund didn't buy the stock in the open market and just allocated it among, you know, plan members, which apparently that's what it does for efficiency sake apparently, doesn't that mean, and maybe it doesn't, but doesn't that mean that for every loss suffered by a plan member, another plan member that sold the stock at an inflated price got a windfall gain? But the accounting doesn't work like that, Your Honor. The person who bought the stock is the class member who's entitled to the loss. The person who got the windfall isn't a class member entitled to a loss. There's no loss to have there. But I, Nancy Ross, if I'm purchasing that stock under ERISA, I have to purchase it. And the class council agreed at the hearing I have to purchase it under ERISA at the market price. ERISA requires that for me to buy stock, even by way of in the plan, I have to pay what's called adequate consideration, and ERISA defines adequate consideration as the price prevailing on the market. So I have been injured because I have bought stock, regardless if I bought it from another plan participant, and I have paid too much. I have paid, just like any other outside shareholder, more than the actual value of that stock. And with respect to the stock that the employer has given me, I have received that stock as compensation in a set amount, but really I didn't get my compensation that I was entitled to. Because if the employer says, okay, under the match I owe you $1,000, and so, you know, the employer gives me that in stock, but the stock is really only worth $100, I've been denied my compensation. So the point that I want to make to the Court is, and by the way, Your Honor, Motorola, just to clarify one thing that Mr. Goldsmith said, when the Motorola case went up to the Seventh Circuit, the Seventh Circuit said nothing about how to treat unitized interest in a 401k plan, the Seventh Circuit remained silent on that, and actually the ruling was that the plan couldn't participate at all, because under the class definition, affiliates were carved out, and the Seventh Circuit found that the plan was an affiliate. So the Motorola lawsuit that disagreed with the Kurzweil lawsuit, and I think the Kurzweil explanation of how unitized interests work and why they are the same, entitled to the same recovery, is I think Judge McCasey was very clear in describing the reasoning that unitized interest, the stock held as unitized interest should be treated no differently than the stock purchased by outsiders. And basically, though, the district court disagreed with you here. The district court here, yes. Judge Felter disagreed with us. Okay. Thank you. And her ruling, Your Honor, was because she directly tied to her view of the class definition, which said it has to be purchased in the open market. Again, and that's when I gave the ER site earlier. And the problem with that ruling is it completely ignores the or side of it, which was acquired pursuant to a registration statement. Thank you, Your Honor. Thank you very much. The case just argued will be submitted.
judges: Molloy, Reinhardt, Murguia